**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | CASE NO 21-30107-hcm |
| PDG PRESTIGE, INC., | § § | Chapter 11 |
| Debtor. | § § | |
| PDG PRESTIGE, INC., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Adversary No. 22-03006-hcm |
| DENNIS CRIMMINS | § § | |
| Defendants | § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS (RE: DOCKET NO. 3)**

PDG Prestige, Inc., reorganized debtor and Plaintiff herein ("PDGP" or the "Plaintiff") files this Plaintiff's Response to Defendant Dennis Crimmins' ("Crimmins" or the "Defendant") *Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint* (Docket No. 3) (the "Motion") and in support thereof would respectfully show to the Court the following.

## I. INTRODUCTION

1. The, Defendant seeks to escape liability at this early stage by contending that Plaintiff failed to state a claim for which relief may be granted against Defendant. Defendant is mistaken on this matter. The complaint contains sufficient facts as to each cause of action. Therefore, Plaintiff respectfully asks the Court to deny the Motion.

## II. PROCEDURAL HISTORY

2. On May 27, 2022, Plaintiff filed its original complaint (Docket No. 1) (the "Complaint").

3. On June 27, 2022, Defendant the Motion (Docket No. 3)

### III. STANDARD OF REVIEW

4. When deciding a Rule 12(b)(6) motion, the Court must assume that Plaintiff's non-conclusory factual allegations are true and cannot decide disputed factual issues. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If the allegations also "plausibly give rise to an entitlement to relief," the Court should not dismiss the complaint for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must indulge "all reasonable inferences in favor of" Plaintiff. *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996). The Court is not required to make any findings of fact or conclusions of law when ruling on a 12(b)(6) motion. *See* FED. R. CIV. P. 52(a)(3).

5. The primary purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To elaborate on the "fair notice" principle, the Supreme Court issued opinions in 2007 and 2009 announcing and clarifying the standard for what a complaint must contain to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). For a complaint to meet the pleading requirements of Rule 8(a)(2) and to survive a Rule 12(b)(6) motion to dismiss, the following conditions must be met: (1) every element of each cause of action must be supported by specific factual allegations; and (2) the complaint must state a plausible claim for relief.

6. A Rule 12(b)(6) motion requests the court do dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss, a court generally accepts as true all factual allegations contained in the complaint.

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).

    7.    A complaint survives a motion for dismissal if the plaintiff pleads sufficient facts to state a claim for relief that is facially plausible. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id*. Determining plausibility is a "context-specific task" that must be performed in light of a court's "judicial experience and common sense." *Id*. at 1950.

### IV. PLAINTIFF'S CLAIMS AGAINST DEFENDANT

    8.    Plaintiff brings three primary claims against Defendant: (1) malicious abuse of process; (2) defamation; and (3) tortious interference with prospective contractual relations.

    9.    The only discernable basis for Defendant's challenge to these claims is his contention that there are no facts alleged to support Plaintiff's claims.

**A.  <u>Facts Pleaded to Support Plaintiff's Claims Against Defendant.</u>**

    10.    Plaintiff pleads the following with respect to the foregoing claims.

    11.    In 2014, Crimmins and PDG, an entity not involved in the present litigation, were involved in a separate litigation with each other wherein Crimmins was the plaintiff and PDG, along with Michael Dixson ("Dixson") were the defendant. *See* Complaint ¶ 8.

12. On or about August 7, 2018, PDG transferred to PDGP Inc. (a separate entity and Plaintiff in the present litigation) a tract of real property (the "Subject Property"), which is the property that has been the subject of the underlying bankruptcy case. *See Id.* ¶ 10.

13. On or about January 10, 2019, Crimmins and PDG and Dixson entered into a settlement agreement for the 2014 litigation (the "2019 Settlement"). *See Id.* ¶ 11.

14. The defendants later breached the settlement. On August 28, 2019, a New Mexico Court entered a Stipulated Judgment against the defendants of the 2014 litigation. *See Id.* ¶ 12-13.

15. On or about August 14, 2020, Crimmins along with other parties filed suit against Dixson, PDG, and PDGP alleging fraud and fraudulent transfer alleging that PDG conveyed the Subject Property to avoid placing it within reach of the Stipulated Judgment. *See Id.* ¶ 14-15.

16. The Subject Property was unconnected to any obligations of the 2019 Settlement and/or the Stipulated Judgment and had nothing to do with the 2014 Litigation. *See Id.* ¶ 17. In fact, the transfer of the Subject Property took place well before the parties entered into the 2019 Settlement and far before the Stipulated Judgment. *Id*.

17. On or about August 26, 2020, Crimmins recorded one or more notices of lis pendens (the "Lis Pendens") against the Subject Property. *See Id.* ¶ 16.

18. On February 15, 2021, PDGP filed a voluntary petition to commence the underlying Chapter 11 bankruptcy case. *See Id.* ¶ 18. Shortly thereafter, Crimmins removed his lawsuit to the Bankruptcy Court under the PDGP case. *See Id.* ¶ 19.

19. On November 18, 2021, the Bankruptcy Court determined that the 2019 Settlement had released the claims brought by Crimmins. *See Id.* ¶ 21. Based on the ruling, the Bankruptcy Court entered a judgment against Crimmins. *Id*. Consequently, the Lis Pendens was void and/or

invalid from its inception. *See Id.* ¶ 22. Crimmins subsequently released the Lis Pendens on December 10, 2021. *See Id.* ¶ 23.a

20. The fraudulent Lis Pendens prevented PDPG from concluding several transactions regarding the Subject Property including but not limited to one or more sales and/or financing of some or all of the Subject Property. *See Id.* ¶ 25. Because of this, PDGP suffered damages including lost sales, higher financing costs, attorneys' fees, and the inability to refinance the Subject Property. *See Id.* ¶ 26. These issues eventually resulted in the commencement of the underlying Chapter 11 bankruptcy case. *Id.*

21. Crimmins has a lengthy track record of using bad faith in his dealings, and history of wrongfully using the process of lis pendens against Dixson and/or his entities. *See Id.* ¶ 28. For example, in 2014, Crimmins placed an improper notice of lis pendens on a property which Dixson was developing and demanded a $400,000.00 payment for release. *Id.* The grounds for that lis pendens were baseless. *Id.*

22. Crimmins by background and experience both as a real estate professional and in prior dealings with the principal of the Plaintiff, Mike Dixson, knew and intended the desired effect of that the Lis Pendens would extract against the ability of PDPG to transact the Subject Property.

23. Despite the Subject Property's remoteness to the previous and ongoing disputes, Crimmins maintained the Lis Pendens with the intent to cause harm and damages to PDPG. *Id.* ¶¶ 29-31.

**B. <u>Legal Basis for Plaintiff's Malicious Abuse of Process Claim against Defendant.</u>**

24. As a preliminary matter, Plaintiff does not dispute Paragraph No. 10 of the Motion that New Mexico substantive law applies to this dispute. The claims and/or causes of action of the Complaint are pleaded under and using New Mexico law.

25. In recent years, "New Mexico has restated two traditionally distinct torts—malicious prosecution and abuse of process—as a single cause of action: malicious abuse of process." *O'Brien v. Behles*, 2020-NMCA-032, ¶ 33, 464 P.3d 1097, 1110. New Mexico courts established that both torts served the common purpose of offering redress to a plaintiff made subject of a legal process for an improper purpose, and protecting the interest in freedom from unjustifiable litigation. *See DeVaney v. Thriftway Mktg. Corp.*, 1999-NMSC-001, ¶ 12-17, 124 N.M. 512, 953 P.2d 227. To establish a claim for malicious abuse of process, the plaintiff must show (1) a use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process was to accomplish an illegitimate end; and (3) damages. *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19.

26. The first element requires an overt act. This overt act can be established in one of two ways: (1) by filing a complaint without probable cause, or (2) by an irregularity or impropriety suggesting extortion, delay, or harassment, or some other illegitimate end. *Id*.

27. In regards to the first method, "probable cause" may be defined as "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *DeVaney*, 1998-NMSC-001 at ¶ 22. The Supreme Court of New Mexico based its definition of "probable cause" on the Restatement (Second) of Torts Section 675 (1977), which states, "[o]ne who takes an active part in the initiation, ***continuation*** or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of facts upon which the claim is based." (emphasis added) *O'Brien*, 464 P.3d at 1111. New Mexico courts have further expanded probable cause stating that there is no "meaningful conceptual distinction between the conduct of a defendant who

commences litigation without probable cause and the conduct of a defendant who continues litigation without probable cause." *Id*. at 1112. In fact, in a jury charge for malicious prosecution, the Supreme Court of New Mexico stated that defendants shall be held liable if the defendants "were without probable cause to maintain or to continue said civil action and that said action was instituted or continued in malice on the part of the [d]efendants." *Bokum v. Elkins*, 1960-NMSC-091, ¶¶ 9-10, 17, 67 N.M. 324, 355 P.2d 137.

28. In the present case, Plaintiff has alleged sufficient facts to establish Element No. 1: that Defendant used a process in a judicial proceeding that would be improper in the regular prosecution, or ***continuation*** of prosecution, of a claim or charge. Defendant's overt act (fulfilling Element No. 1) occurred when he filed the August 2020 lawsuit alleging fraud and fraudulent transfer of the Subject Property, without probable cause. *DeVaney*, 1998-NMSC-001 at ¶ 22.

29. Defendant filed a lawsuit alleging that Plaintiff's lawful transfer of the Subject Property was actually a fraudulent act. Defendant alleged that PDG conveyed the Subject Property as a means to avoid placing it within reach of the Stipulated Judgment. However, the transfer of the Subject Property took place on or about August 7, 2018. The 2019 Settlement was entered into at a much later date—on or about January 10, 2019—and the Stipulated Judgment was entered on August 28, 2019. Therefore, as this Court previously has concluded, the transfer of the Subject Property had nothing to do with either the Stipulated Judgment nor the 2019 Settlement.

30. Despite knowing this, Defendant chose to file a lawsuit in an attempt to freeze title to the Subject Property and disadvantage Plaintiff. Defendant knew that PDGP was never liable for any of the obligations of the Stipulated Judgment nor the 2019 Settlement and that PDGP acquired title to the Subject Property before the 2019 Settlement.. Nevertheless, Defendant

initiated a lawsuit in which he knew he had no probable cause or reasonable belief that a claim could be established.

31. Defendant did not stop there. Defendant *continued* prosecution of the frivolous lawsuit by recording one or more notices of lis pendens. According to New Mexico common law, a wrongful filing of a notice of lis pendens "may support an action for abuse of process." *Superior Const., Inc. v. Linnerooth*, 1986-NMSC-008, ¶ 13, 103 N.M. 716, 718, 712 P.2d 1378, 1380. Wrongfully filing a notice of lis pendens is exactly what Defendant did in the instant case. Therefore, Defendant's filing of the lawsuit and recording of the Lis Pendens constitutes an improper use of a judicial proceeding and consequently supports this action for abuse of process.

32. Regarding Element No. 2, without question, the primary motivation behind Defendant's filing of the lawsuit and the subsequent Lis Pendens was to accomplish an illegitimate end. *See* Complaint ¶¶ 25-29. Specifically, Defendant's objective was to disable PDGP's ability to transact the Subject Property in any way possible—such is the very purpose and effect of any notice of lis pendens. *See* Complaint ¶ 26. Defendant knew that the Subject Property was conveyed to PDGP far before the inception of the 2019 Settlement and the Stipulated Judgment in 2019. *See* Complaint ¶ 17. Defendant knew that PDGP has nothing to do with the previous litigation and was never liable for any of the obligations of the Stipulated Judgment. *See* Complaint ¶ 17. The only logical motivation behind the lawsuit and Lis Pendens was to injure PDGP like Defendant has done on multiple occasions in the past. *See* Complaint ¶ 28.

33. Plaintiff suffered damages due to Defendant's actions, and thus Element No. 3 is satisfied from a pleading perspective sufficient to defeat the Motion. Plaintiff was prevented from selling, financing, and/or concluding other transactions with respect to the Subject Property. *See* Complaint ¶ 26. Consequently, PDGP suffered damages including lost sales, higher financing

costs, attorneys' fees, and the inability to refinance the Subject Property. *See* Complaint ¶ 28. The collection of these circumstances ultimately resulted in the commencement of the underlying Chapter 11 bankruptcy case in order to avoid foreclosure. *See* Complaint ¶ 26.

34. The Motion does nothing to dislodge the key difficulty with the Lis Pendens to begin with, specifically that it was devoid of substance based upon the simple timing of events and plain four-corners of the documents. The Subject Property was beyond the scope of any of the parties' dispute by the time when Defendant recorded each Lis Pendens. The faulty logic asserted in the Motion is the same logic rejected by this Court in Adversary No. 21-03007. By the timing of the transfer and the releases in the 2019 Settlement, Defendant simply lacked "the standing to file a lawsuit…affecting title to real property" which the Defendant mistakenly imagines now to have once possessed. *See* Motion, at 5, ¶ 15.

35. Defendant's position asserted in the Motion, at worst, would also effectively destroy the New Mexico cause of action for abuse of process, and leave an owner or other interest holder in real property with no redress for the affects of a void or voidable lis pendens, no matter how egregious the error. Otherwise, Defendant's position asserted in the Motion highlights a factual threshold that Plaintiff must meet in its burden of proof in this action, but otherwise which is satisfied for Rule 12(b)(6) purposes by the existing allegations of the Complaint.

C. **Defamation**

36. The Motion attacks the defamation claim of Plaintiff but misconstrues the scope of the defamation claim in this context. The parties in *Superior Const. Inc. v. Linnerooth*, as citied by Defendant, were in direct privity with one another (owner-contract), but Plaintiff and Defendant here never were in privity. The defamation claim here in the Complaint is not limited to and does not rely upon any slander of title aspect of the lis pendens. The claim of Plaintiff describes the

effect of upon third parties that occurred by virtue of the clearly erroneous lis pendens, and what the lis pendens communicated to third parties about what Plaintiff could and could not do with the Subject Property. *See* Complaint, ¶ 38. The defamatory nature of the Lis Pendens here is not something that was revealed in the course of the state court action that became Adversary No. 21-03007. Accordingly, the defamation described in the Complaint falls within the very exception recognized by *Superior Const. Inc. v. Linnerooth*.

**D. Legal Basis for Plaintiff's Tortious Interference with Prospective Contractual Relations Claim against Defendant.**

37. To bring a claim of intentional interference with prospective contractual relations, the plaintiff must establish that a defendant "improperly interfered with the plaintiff's contractual relations, either through improper means or improper motive." *Diversey Corp. v. Chem–Source Corp.*, 1998—NMCA—112, ¶ 20, 125 N.M. 748, 965 P.2d 332.

38. With respect to Plaintiff's tortious interference claim, the Motion (at p, 8, ¶ 24) alleges that the Complaint fails to allege any facts regarding Defendant's intent or knowledge. To the contrary, the Complaint contains such allegations, including without limitation specifically in Complaint ¶¶ 28-31 and 41-45.

39. The Motion (at p, 8, ¶ 26) further alleges that the Complaint fails to allege any facts regarding Defendant's intent, Defendant's knowledge, and the existence of prospective contractual relations. The Defendant is wrong on each point.

40. The intent of the Defendant is addressed throughout the Complaint including especially in Complaint ¶¶ 28-31 and 44. Beyond that, the maintenance of the Lis Pendens throughout the underlying state court action that was removed to become Adversary No. 21-3007 through the final adjudication of that action, demonstrates manifest intent to deprive PDGP of the ability to transact the Subject Property with any third party. Again, such is the very purpose and

function of any lis pendens. The state court action also included a motion by PDPG to cancel the lis pendens, which Crimmins opposed. *See* Adv. No. 21-3007, Docket No. 1-3. The state court action also included PDPG's January, 2021 motion for summary judgment. *See* Adv. No. 21-3007, Docket No. 1-5.[1] Crimmins opposed these to maintain the Lis Pendens.

41. The knowledge of Defendant is addressed throughout the Complaint including especially in Complaint ¶¶ 28-31 and 43. Complaint ¶ 43 alleges precisely that fact. Complaint ¶ 29 does so as well.

42. The existence of existing and/or prospective contractual relations is addressed throughout the Complaint including especially in Complaint ¶¶ 25-27, 31, and 41-42. A specific dollar amount of lost transactions and thus damages is alleged: $4.5 million. Specific kinds of transactions are described, including selling and financing. Complaint ¶¶ 25-26. The fact that the CityBank foreclosure precipitated in the Chapter 11 filing of PDGP is beyond dispute.[2]

43. Thus the tortious interference count in all regards meets the necessary plausibility thresholds with the context of this particular situation. *Iqbal*, 129 S.Ct. at 1950.

44. Because of Defendant's conduct, PDGP suffered economic or other business harm of upwards of $4.5 million as a result of the interference caused by the Lis Pendens and other acts by Defendant. The Lis Pendens succeeded in its very illegitimate purpose of clouding the Subject Property to the Point that PDPG could not transact the Property with third parties, which results where within the intention and knowledge of Crimmins as an experienced real estate developer..

---

[1] The Court may take judicial notice of the record in Adv. No. 21-0307 in this action. Fed. R. Ev. 201.

[2] Fed. R. Ev. 201.

E. **Basis for Plaintiff's Claim to Punitive Damages.**

45. Plaintiff is entitled to recover punitive damages within the discretion of the Court because it has plead facts that support its allegations.

46. Three kinds of damages typically are awarded to the prevailing party: (1) damages designed to remedy injury; (2) damages designed to punish a wrongdoer; and (3) damages available without having to prove existence or extent of injury. *Faber v. King*, 2015-NMSC-015, ¶ 19, 348 P.3d 173, 179. "Punitive damages are awarded not to compensate a plaintiff for injury or loss suffered but to penalize a defendant for particularly egregious, wrongful conduct." *Id.*

47. In the present case, Plaintiff has alleged sufficient facts to establish each element of each claim asserted. Furthermore, Defendant's historical behavior in taking advantage of the judicial system for his own gain constitutes wrongful and egregious conduct. Therefore, Plaintiff shall be entitled to an award of damages, which shall include punitive damages.

F. **Attorneys' Fees.**

48. Plaintiff's claim for attorneys fees should not be dismissed at this stage of the proceeding. Whether Plaintiff is entitled to attorneys' fees or not can and should be determined upon final adjudication of each claim.

## VI. LEAVE TO AMEND

49. Plaintiff contends that the Complaint provides sufficient factual detail in order to defeat the Motion. However, in the event that the Court determines that the Complaint should include greater specificity or otherwise does not satisfy the issues raised by Defendant, then Plaintiff would request leave to amend the Complaint within twenty-one (21) days of an order of the Court so requiring. Amendments to the Complaint would not be futile, particularly with respect to the three underlying substantive claims and with respect to punitive damages.

50. "A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183–84 (1st Cir.1997)). "Rule 15(a) applies where plaintiffs 'expressly requested' to amend even though their request 'was not contained in a properly captioned motion paper.' *Willard* (See *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (5th Cir.1988). A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. Fed.R.Civ.P. 7(b)(1), 15(a); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445–46 (9th Cir.1990). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, cf. Fed.R.Civ.P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C.Cir.1993)."

51. Any amendment that might be necessary would address the alleged defects Complaint identified in the Motion.

52. With respect to all claims, the amendment of the Complaint would address the particular existing and/or prospective transactions (including lost rent and a lost sale and/or capital event with a Mr. L.J. Shamaley as a counter party) that were defeated by the existence of the Lis Pendens, the consequent knowledge of those parties by or upon learning of the Lis Pendens, and further detail of the resulting damages in terms of, for example, lost sales and/or rents, additional expenses of interest carry (starting with City Bank and the much, much higher interest charged by

Legalist[3]), taxes, insurance, and legal fees, all suffered by Plaintiff before removal of the Lis Pendens.

53. With respect to tortious interference, amendment would further detail the efforts of PDPG (through PDGP's President, Michael Dixson and PDPG's attorney, David Lutz) to obtain a release of the Lis Pendens so that PDGP could transact the Subject Property before the commencement of the underlying bankruptcy case, thus providing additional details of the knowledge accumulated by and continuing intentions of Crimmins over time following the initial recording of the Lis Pendens.

54. However, PDGP reiterates that the natural purpose and effect of any notice of lis pendens is to prevent a party from transacting the property, and that such additional details for purpose of pleading are not necessary in this context. Otherwise, the efforts demonstrated in the underlying state court lawsuit satisfy any and all knowledge and intent aspects of the tortious interference claim.

## VII. CONCLUSION

WHEREFORE, Plaintiff, PDG Prestige, Inc., respectfully requests that the Court enter an order denying Defendant Dennis Crimmins' Motion, and/or permitting Plaintiff to replead to add greater specificity or otherwise address any issues raised by the Court, and granting Plaintiff such other and further relief to which Plaintiff may be entitled, in law or in equity.

---

[3] *See* Case No. 21-30107, Docket Nos. 24, 43 (Legalist financing motion and order).

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _*/s/ Jeff Carruth*_
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail: jcarruth@wkpz.com


ATTORNEYS FOR PDG PRESTIGE, INC.,
REORGANIZED DEBTOR AND PLAINTIFF


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on July 22, 2022 (1) by electronic notice to all ECF users who have appeared in this case to date, and/or as set forth.

    Casey S. Stevenson (cste@ScottHulse.com)
    James M. Feuille (jfeu@scotthulse.com)
    SCOTTHULSE PC
    201 E. Main St.
    P.O. Box 99123
    El Paso, Texas 79999-9123
    Attorneys For Defendant

                                          _*/s/ Jeff Carruth*_
                                          Jeff Carruth